## Case No. 10,395.

### In re OBEAR.

### In re THOMAS.

[3 Dill. 37; [1] 10 N. B. R. 151; 1 Cent. Law J. 362.]

Circuit Court, E. D. Missouri. July 8, 1874.

BANKRUPT ACT — RETROACTIVE OPERATION OF AMENDMENT OF JUNE 22, 1874.

While the late amendment to the bankrupt act is retrospective in its operation so as to bring within it all cases commenced since December 1, 1873, and in which at the time of the passage of said amendment, June 22, 1874 [18 Stat. 178], the petitions for the adjudications remained to be acted on, yet it does not annul or disturb judgments rendered or adjudications made and in force at the time of the taking effect of said amendment.

[Cited in Re Comstock, Case No. 3,077; Re Leland, Id. 8,231.]

These are petitions for review under section 2 of the bankrupt act.

Facts in the case of E. G. Obear: On the 4th day of May, 1874, a creditor's petition was filed against Obear in the district court for the Eastern district of Missouri, stating that, being a broker and a trader, he did, on the 28th day of May, 1873, suspend, and did

not within fourteen days, nor at any time thereafter, resume payment of his commercial paper. To an order to show cause, Obear appeared on the 13th day of May and admitted the petition, and he was thereupon, on that day, by the court, adjudicated and declared a bankrupt, and subsequently, June 22d, an assignee was elected, to whom a deed of assignment was made, and was regularly proceeding in the discharge of his duties until June 30th, when the district court, on its own motion, made the following order: "It is ordered that the petitioning creditor amend his petition within thirty days so as to conform to the twelfth section of the act of congress, approved June 22d, 1874, in the following respects, to-wit: "1st. By alleging that the number of unsecured creditors who have joined therein constitute at least one-fourth in number, and that the aggregate of their debts, provable under this act, amounts to at least one-third of all the debts so provable. 2d. Said amended petition shall be signed and verified by the first five signers thereof, if so many there be, in the manner and form required by said act. 3d. The allegation in the original petition of the suspension of the debtor's commercial paper for fourteen days, shall be so amended as to aver the suspension and non-resumption thereof within a period of forty days before the filing of the original petition of his commercial paper made or passed in the course of his business as such broker or trader. And it is further ordered that all other proceedings in the case be stayed until said amended petition is filed." To this order the petitioning creditor, the bankrupt, and certain secured and unsecured creditors excepted; and it is to have the same reviewed that the petitioning creditor has brought the present petition.

Facts in the case of James S. Thomas: In this case a creditor's petition was filed against Thomas on the 25th day of April, 1874, duly charging as an act of bankruptcy the suspension of his commercial paper on the 15th day of November, 1873. Such proceedings were had that Thomas was regularly adjudicated a bankrupt on the 25th day of April, and his case referred to a register. Creditors met on May 30th, and resolved to proceed under section 43 of the bankrupt act [of 1867 (14 Stat. 538)], and appointed a committee of one, John G. Priest, as trustee, to whom all the property of Thomas was conveyed, and who has since then been engaged in winding up and settling the trust. On the 30th day of June the district court, on its own motion, entered an order similar to the one in Obear's case, above given, and which was excepted to in like manner, and is now here for review at the instance of the petitioning creditor, the bankrupt and other creditors.

J. B. Woodward, for Obear's creditors.
Hill & Bowman, for Thomas's creditors.

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

DILLON, Circuit Judge. In both the cases before me the proceedings in the district court were commenced after December 1st, 1873, and the adjudication of the debtors as bankrupts was made before the late act amending the bankrupt act took effect, and in neither of the cases had the estates then been fully settled.

The recent amendment to the bankrupt law makes several important changes in respect to involuntary bankruptcy, and among other changes it requires that at least one-fourth in number of the creditors, representing one-third in amount of the provable debts, shall petition for the adjudication; and the time of the suspension of the payment of commercial paper, constituting an act of bankruptcy, is extended from fourteen days to forty days, and it prescribes and limits what shall be considered such paper.

The amendatory act approved June 22d, 1874, is made retroactive in the following language: "The provisions of this section shall apply to all cases of compulsory or involuntary bankruptcy commenced since the 1st day of December, 1873, as well as to those commenced hereafter. And in all cases commenced since the 1st day of December, 1873, and prior to the passage of this act, as well as those commenced hereafter, the court shall, if such allegation as to the number or amount of petitioning creditors be denied by the debtor by a statement in writing to that effect, require him to file in court forthwith a full list of his creditors, with their places of residence and the sums due them respectively, and shall ascertain, upon reasonable notice to the creditors, whether one-fourth in number and one-third in amount thereof,' as aforesaid, have petitioned that the debtor be adjudged a bankrupt. But if such debtor shall, on the filing of the petition, admit in writing that the requisite number and amount of creditors have petitioned, the court, if satisfied that the admission was made in good faith, shall so adjudge, which judgment shall be final, and the matter proceed without further steps on that subject. And if it shall appear that such number and amount have not so petitioned, the court shall grant reasonable time, not exceeding, in cases heretofore commenced, twenty days, and in cases hereafter commenced, ten days, within which other creditors may join in such petition. And if, at the expiration of such time so limited, the number and amount shall comply with the requirements of this section, the matter of bankruptcy may proceed; but if, at the expiration of such limited time, such number and amount shall not answer the requirements of this section, the proceedings shall be dismissed, and in cases hereafter commenced, with costs," etc.

Undoubtedly the new act is retrospective in its operation so as to bring within it all cases commenced since December 1st, and in which, at the time of its passage, the petitions for the adjudication remained to be acted on.

Without entering upon the inquiry as to the competency of congress to annul by mere legislative declaration prior adjudications of bankruptcy, regularly made, in pursuance of laws in force at the time, and the conveyance and acts thereunder, I am of the opinion that congress did not intend by the amendatory act to overturn or disturb adjudications then already made and in force. The arguments in support of this view are derived from the language of the amendment; from the accepted principle of construction that statutes are to have no further or greater retrospective operation than plainly appears to have been the legislative intention; and from the failure of congress to make any provision for the necessary consequences of setting aside all adjudications in bankruptcy, and all acts done under them throughout the United States for the seven preceding months.

While the language making the law retroactive as to cases commenced since December 1st is very broad and applies to "all cases" commenced since that day and prior to the passage of the amendatory act, yet it is obvious that the purpose of congress was to put such cases upon the footing of new cases so as to enable them to participate equally in the benefits of the new provisions. But it is implied from the nature of the proceedings and the steps that are prescribed to be taken in respect to both old and new cases, that by the language quoted, congress contemplated pending cases in which no adjudication had yet been made. The law requires the adjudication to be made upon the petition of creditors, and as amended, requires a given proportion of the creditors to concur, and limits the time within which, both as to old and new cases, the requisite number and amount must join in the petition. The court determines whether the requisite number and amount have or have not petitioned—if they have, the matter proceeds, and the adjudication will or will not be made, depending upon whether the alleged acts of bankruptcy are or are not established. On the other hand, if the statutory requirement as to the number and amount of creditors is not met, the provision is that the proceedings shall be dismissed. All this clearly shows that congress had in contemplation cases in which no adjudication had been made, for these steps are all preparatory to an adjudication, and this view is further confirmed by the provision of section 13, amending section 40 of the original act.

Besides, it is impossible to suppose that congress overlooked the fact that throughout the United States, between December and June, there were many hundred cases in bankruptcy in which adjudications had

been made and which were in various stages of progress, some in which little had been done, others in which property had been sold, suits decided, and dividends made, but which were not yet entirely closed. If it had been intended by congress to annul all that had been done under the bankrupt act since the 1st day of December, overturning adjudications, and disturbing settlements, payments, dividends, conveyances, etc., it is quite incredible that provisions would not have been made for this extraordinary and confused state of affairs. The amendatory act is silent as to the rights and remedies of the various parties who would be affected by legislation having this grave and extensive retrospective operation. The argument, then, is a strong one that no such consequences were intended; and the more so since the retroactive provisions may have full effect given them by holding them as intended to apply to all cases commenced since the 1st day of December which had not progressed to an adjudication at the passage of the amendatory act.

I am of the opinion, therefore, that the orders of the district court in each of the cases under review were erroneous, and they are accordingly reversed. These orders were purposely made as they were, not as necessarily embodying the opinion of the district court, but that they might present for review cases which would measure the scope of the retroactive operation of the amendatory act. And what I hold is that it does not affect decrees or adjudications then made, while conceding that its remedial provisions do in many respects apply to cases brought since December 1st, and which were pending when it went into operation. Orders reversed.

[For a petition of the Broadway Savings Bank to vacate adjudication of bankruptcy in the matter of James S. Thomas, see Case No. 13,891.]

NOTE. The retroactive clauses of the late amendment to the bankrupt act have already, in several instances, come before the federal courts for construction and application.

In Re Angell [Case No. 386], Longyear, J., July 9th, 1874, held that the provisions of section 12 of the amendatory bankrupt act of 1874, which relate to the number and value of petitioning creditors, apply only to cases where the petition for adjudication was still pending, and not to cases in which adjudications had passed upon the petition, before the approval of the act. So it was likewise held by Blodgett, J., in Re Scammon [Case No. 12,430].

Judge Hopkins, of the United States district court for the Western district of Wisconsin, in the Case of Raffauf [Case No. 11,525], bankrupt, decided that the amendment did not disturb adjudications already made. The facts upon which the question arose were these: The bankrupt has filed affidavit showing that the requisite number of his creditors did not petition for his adjudication according to the twelfth section of the recent act amendatory of the bankrupt law,

and moves that the proceedings be dismissed unless a sufficient number join in the petition within the time prescribed in said act. The petition was filed against the bankrupt in this case on the 5th day of February, 1874, and an order was made requiring him to show cause. on the 16th day of February. why he should not be adjudged a bankrupt, which was duly served upon him. On the 16th of February he was adjudged bankrupt by default, and a warrant issued to a messenger in due form, upon which his property was seized, and his creditors notified of the first meeting before the register to elect an assignee. On the day fixed an assignee was duly chosen by the creditors, who then and there accepted, qualified, and proceeded in the execution of his trust. under the assignment. He was pursuing his duties as such assignee when the amendatory act above mentioned was passed. The question raised in this case is whether the amendatory act applies to cases in the advanced condition this was when the act took effect.

The conclusion of the learned judge was expressed by him in the following language: "My conclusions upon the case here presented are, that it is not necessary to amend the petition, where there had been an adjudication before the amendment took effect; that the provisions of the amendment in regard to the number and amount of the petitioning creditors do not apply to such cases; but on the contrary, I hold that the judgment of adjudication based upon a petition conforming to the provision of the law in force when made. is valid, and as binding upon the debtor and his creditors as if the amended act had not been passed; that the adjudication removes the case beyond the domain of legislative control. The motion of the bankrupt is denied."

In re Rosenthal [Case No. 12,062], bankrupt, before the judge of the United States district court for the Western district of Missouri, presented the following questions as stated in the opinion of Judge Krekel: "Can a bankrupt by a mere protest made to the assignee. alleging want of jurisdiction in the court, in a case commenced since the 1st of December, 1874, and prior to the late amendments of the bankrupt law, stop the declaring of a dividend which could legally be declared under the law prior to the amendments?" The court very properly held in the negative, and in the course of its opinion remarked:

"All parties. debtor as well as creditors, may be willing that the proceedings pending shall go on to final settlement. It would require a very plain provision of law to show that congress intended to arrest and oust the court of the jurisdiction of a case which had been commenced and prosecuted under existing laws and progressed to the satisfaction of all parties."

Reduction of Fees—Fees of Clerk of District Court. Section 18 of the amendment to the bankrupt act. approved June 22. 1874, provides that after its passage "the fees. commissions, charges and allowances. excepting actual and necessary charges and allowances, of, and to be made by the officers. agents. marshals, messengers. assignees and registers in bankruptcy, shall be reduced to one-half of the fees, commissions, charges and allowances heretofore provided for or made in like cases." In Re Hunt [Case No. 6,882]. bankrupt. it was held by the circuit judge of the Eighth circuit that this reduction applied to the fees of the clerk of the district court as well as to the fees. etc., of the other officers therein mentioned for services since June 22d, 1874.